UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

DWIGHT CHRIS JORGENSEN,

Petitioner,

v.

B. EISCHEN,

Respondent.

Case No. 22-cv-1383 (KMM/JFD)

**REPORT AND RECOMMENDATION**

---

This matter is before the Court on Dwight Chris Jorgensen's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Dkt. No. 1). Mr. Jorgensen contends that the Bureau of Prisons (BOP) is not applying his First Step Act (FSA) time credits to his sentence computation or to his percentage-of-time-served computation immediately when they are earned.[1] (Pet. at 6–8,[2] Dkt. No. 1.) He contends that this is causing him to be incarcerated longer. (*Id.* at 8.)

The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. The Court recommends that Mr. Jorgensen's Petition be dismissed without prejudice, as it is not ripe

---

[1] Mr. Jorgensen raised other grounds for relief in his Petition, which, he acknowledges in his reply memorandum, have become moot since the Petition was filed. (Pet'r's Reply at 1, 6–7, Dkt. No. 15.) Those grounds were the calculation of Mr. Jorgensen's Good Conduct Time (GCT) credits by the BOP and the calculation of Mr. Jorgensen's FSA time credits by the BOP. (Pet. at 6–8.) Because Mr. Jorgensen has acknowledged that these issues are moot, the Court does not address them.

[2] The Court uses the page numbers provided by the ECF system when citing to court filings.

for adjudication and therefore does not present a "case or controversy" within the meaning of Article III of the U.S. Constitution. Specifically, the FSA time credits (FTCs) Mr. Jorgensen has earned to date cannot be applied to his sentence or to his percentage-of-time-served computation because they do not equal the remainder of his term of imprisonment.

## BACKGROUND

Mr. Jorgensen is confined at the Federal Prison Camp in Duluth, Minnesota (FPC-Duluth). (Pet. at 1, Dkt. No. 1.) He is serving a 168-month sentence after being convicted of conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine or 50 grams or more of actual methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 846. (Pet. Ex. 1 at 1, Dkt. No. 1-1; Gandy Decl. ¶ 4, Dkt. No. 12; Gandy Decl. Ex. A at 2, Dkt. No. 12-1.) Mr. Jorgensen's projected release date is June 12, 2029. (Winger Decl. ¶ 3, Dkt. No. 13; Winger Decl. Ex. A at 2, Dkt. No. 13-1; Pet'r's Reply Ex. C at 2, Dkt. No. 15-1.)

Mr. Jorgensen's Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) score has been "Minimum" since his initial program review on November 21, 2019. (Winger Decl. ¶ 5, Dkt. No. 13; Winger Decl. Ex. B at 1, Dkt. No. 13-2.) Mr. Jorgensen has participated in Evidence-Based Recidivism Reduction (EBRR) programming and Productive Activities (PA) since the FSA's enactment in December 2018. (Winger Decl. ¶ 9, Dkt. No. 13; Winger Decl. Ex. D—F, Dkt. Nos. 13-4–6.) The BOP's Central Office has calculated that, as of May 28, 2022, Mr. Jorgensen has earned approximately 615 FTCs. (Winger Decl. ¶ 11, Dkt. No. 13.)

Mr. Jorgensen contends that these FTCs should immediately be applied to his total term served for calculation of his percentage of sentence served, on the ground that 28 C.F.R. §§ 523 and 541 do not specifically state that FTCs will not affect statutory time. (Pet'r's Reply at 8, Dkt. No. 15.)

Respondent contends that this Petition should be dismissed because Petitioner failed to exhaust administrative remedies before filing the Petition. (Resp. at 13, Dkt. No. 10.) Alternatively, Respondent contends that the Petition should be dismissed as premature, on the ground that Petitioner's earned FTCs "do not equal the remainder of his term of imprisonment." (*Id.* at 19.)

## ANALYSIS

A court may grant habeas relief under 28 U.S.C. § 2241 to a prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction, *Matheny v. Morrison*, 307 F. 3d 709, 711 (8th Cir. 2002), including the computation of the sentence, *Preiser v. Rodriguez*, 411 U.S. 475, 498 (1973) (petitions seeking "immediate release or a speedier release from . . . confinement" are "the heart of habeas corpus"). Mr. Jorgensen argues that the BOP's failure to apply his FTCs to his sentence is delaying his release from confinement and therefore he is being held in violation of the Constitution, laws, or treaties of the United States. Mr. Jorgensen's claim is about the proper computation of his sentence, and as such, it may be brought under § 2241. *See United States v. Reed*, No. 18-CV-1431 (SRN/DTS), 2023 WL 2308271, at *5 n.4 (D. Minn. Mar. 1, 2023); *Rand*

3

*v. Fikes*, No. 21-CV-1276 (JRT/JFD), 2021 WL 5569649, at *4 (D. Minn. Sept. 13, 2021), *R. &. R adopted*, 2021 WL 5567900 (Nov. 29, 2021).

### Because of the Time-Sensitive Nature of Mr. Jorgensen's Claim, He Should be Excused from Exhausting Administrative Remedies.

A federal prisoner seeking relief through a writ of habeas corpus pursuant to 28 U.S.C. § 2241 must first exhaust administrative remedies. *Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009) ("A prisoner may bring a habeas action challenging the BOP's execution of his sentence only if he first presents his claim to the BOP."); *see also Willis v. Ciccone*, 506 F.2d 1011, 1015 (8th Cir. 1974) ("If grievance procedures provide an adequate means for impartial review, then a federal prisoner must exhaust available administrative remedies within the correctional system prior to seeking extraordinary relief in federal court."). The Eighth Circuit has held that a federal district court might err by considering the merits of a petition for a writ of habeas corpus when the petitioner fails to demonstrate they have properly exhausted all administrative remedies prior to seeking habeas corpus relief. *United States v. Thompson*, 297 F. App'x 561, 562 (8th Cir. 2008).

The exhaustion requirement for a § 2241 petition is judicially created, however, not jurisdictional. *Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007). Because it is judicially created, courts may create exceptions to it. *E.g., Aguilar v. United States*, No. 15-cv-487 (SRN/JSM), 2015 WL 5719166, at *2 (D. Minn. Sept. 29, 2015) (noting that "habeas petitioners can be excused from the exhaustion requirement if proceeding through the administrative remedy process would undoubtedly be an exercise in futility that could serve no useful purpose"); *see also Elwood v. Jeter*, 386 F.3d 842, 844 n.1 (8th Cir. 2004)

4

(waiving the exhaustion requirement after government's concession that "continued use of the [administrative] grievance procedure to contest the validity of the BOP's new policy would be futile"). "Courts have also excused the exhaustion requirement when the issues raised in the action are time-sensitive and may become moot without expeditious judicial resolution." *Flynn v. Eischen*, No. 22-cv-1265 (ECT/LIB), 2022 WL 18461620, at *2 (D. Minn. Oct. 26, 2022) (finding the time-sensitive nature of the petitioner's claim, combined with the ease of its resolution, warranted excuse of the exhaustion requirement).

The BOP asks the Court to dismiss the Petition because Mr. Jorgensen did not exhaust his administrative remedies. (Resp. at 14, Dkt. No. 10.) Mr. Jorgensen filed administrative remedy requests at the institutional and regional levels, but not at the national level. (Boldt Decl. ¶ 13, Dkt. No. 11; Boldt Decl. Ex. A, Dkt. No. 11-1.) Mr. Jorgensen responds that the time it could have taken to exhaust his administrative remedies could have extended past the expiration of the Coronavirus Aid, Relief, and Economic Security (CARES) Act. (Pet'r's Reply at 4–5, Dkt. No. 15.) He concedes, however, that he did not allege in his Petition that he would be eligible under the CARES Act. (*Id.* at 4.) He also points out that any appeal to the national office had to be received within 30 days of the date of the regional decision, but he did not receive the regional decision until 30 days after it was dated. (*Id.* at 3.)

The Court will not recommend dismissal in this case for failure to exhaust administrative remedies because Mr. Jorgensen's Petition has been pending for some time[3]

---

[3] Mr. Jorgensen filed the Petition on May 23, 2022.

and presents a straightforward legal question. Furthermore, the Court can decide this matter on the existing record; it is doubtful that additional administrative proceedings would generate any additional facts. *See Wanner v. Eischen*, No. 22-CV-1307 (JRT/JFD), 2023 WL 3483919, at *4 (D. Minn. Apr. 4, 2023), *R. & R. adopted*, 2023 WL 3480277 (D. Minn. May 16, 2023); *Gurzi v. Marques*, No. 18-CV-3104 (NEB/KMM), 2019 WL 6481212, at *2 (D. Minn. Oct. 10, 2019) (reaching merits of petition because case had been pending for "a substantial length of time" and there was no need to develop the administrative record), *R. & R. adopted*, 2019 WL 6464838 (D. Minn. Dec. 2, 2019).

### Because the BOP May Not Apply FTCs Until They Are Equal to the Remainder of Mr. Jorgensen's Sentence, This Dispute Is Not Ripe for Adjudication.

The Court next considers Mr. Jorgensen's argument that his FTCs should be applied immediately to his sentence. Mr. Jorgensen argues that nothing in 28 C.F.R. §§ 523 or 541 "specifically states FTCs will not affect statutory time." (Pet'r's Reply at 8, Dkt. No. 15.)

The BOP contends that Mr. Jorgensen's claim is not ripe because his accrued FTCs do not equal the remainder of his sentence, based on his projected statutory release date of June 12, 2029. (Resp. at 19, Dkt. No 10.) Respondent asserts that Mr. Jorgensen's PATTERN score could increase, or he could be subjected to disciplinary action, thereby losing time credits before his FTCs equal the remainder of his sentence. (*Id.*) Respondent also contends that "an inmate's FTCs are not currently part of the time served component of an inmate's sentence" and states that the application of FTCs for such purpose is too speculative "because Jorgensen's ability to claim FTCs depends on his PATTERN score at a later date." (*Id.* at 20.)

6

Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2. One characteristic of a constitutionally cognizable case or controversy is that it is "ripe" for adjudication. *See Poe v. Ullman*, 367 U.S. 497, 504 (1961); *Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1037 (8th Cir. 2000). The ripeness doctrine is meant to avoid having courts decide merely abstract or hypothetical disputes that have not yet "ripened" into a "a dispute definite or concrete, not hypothetical or abstract." *Neb. Pub. Power*, 234 F.3d at 1038 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). The ripeness doctrine is rooted not only in Article III's limitation of federal court jurisdiction to cases or controversies, but also in "prudential considerations for refusing to exercise jurisdiction." *Id.* at 1037. In the context of a case like this one, in which a litigant asks a court to scrutinize an act of a federal agency,

> it is fair to say that [the ripeness doctrine's] basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977).

An "eligible prisoner" under the FSA is someone who has earned FTCs "in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." 18 U.S.C. § 3624(g)(1)(A) Further, the BOP has clarified in 28 C.F.R. § 523.44(b) when a prisoner may be considered for the application of FTCs:

> Where otherwise permitted by this subpart, the Bureau may apply FSA Time Credits toward prerelease custody or early transfer to supervised release under 18 U.S.C. 3624(g) only if an eligible inmate has: (1) Earned FSA Time Credits in an amount that is equal to the remainder of the inmate's imposed term of imprisonment . . . .

28 C.F.R. § 523.44(b)(1).

The BOP's calculation shows Jorgensen has earned 615 days of FTCs as of May 28, 2022. (Winger Decl. ¶ 11, Dkt. No. 13.) Mr. Jorgensen agrees this is correct. (Pet'r's Reply at 7, Dkt. No. 15.) Mr. Jorgensen's projected release date is June 12, 2029, leaving him with more than 2,100 days to be served on his sentence as of the date of this Report and Recommendation. Accordingly, Mr. Jorgensen is not eligible for an application of his earned FTCs at this time. *See Wanner*, 2023 WL 3483919, at \*6; *Johnson v. Eischen*, No. 22-cv-1039 (ECT/ECW), 2023 WL 2563148, at \*9 (D. Minn. Feb. 22, 2023) (finding the petitioner's claim for immediate application of his FTCs not ripe, where petitioner had earned 630 days of FTCs and had more than 1,320 days left on his sentence), *R. & R. adopted*, 2023 WL 2560838 (D. Minn. Mar. 17, 2023); *Smith v. Eischen*, No. 22-cv-1704 (NEB/DJF), 2023 WL 3170436, at \*6 (D. Minn. May 1, 2023) (recommending denial of petition where the petitioner had earned 675 FTCs, but still had over 2,300 days left to serve).

Mr. Jorgensen cites *Goodman v. Ortiz*, No. 20-CV-7582 (RMB), 2020 WL 5015613 (D.N.J. Aug. 25, 2020), for the proposition that inmates are entitled to immediate application of FTCs when earned. (Pet'r's Reply at 8, Dkt. No. 15.) *Goodman* is distinguishable, however. The issue in *Goodman* was whether the BOP had to apply a prisoner's FTCs during the two-year phase-in of the FSA, or whether it could delay

8

application until January 15, 2022, which marked the end of the two-year phase-in. The *Goodman* court engaged in a narrow statutory construction of 18 U.S.C. § 3621(h), which governed the implementation of the risk and needs assessment system. The court ruled that "[t]he ordinary meaning of 'phase-in' combined with analysis of the statutory framework of § 3621(h) unambiguously supports the conclusion that the BOP must gradually implement the risk recidivism program, including the priority application of incentives to prisoners whose release dates are nearer," until the end of the phase-in period on January 15, 2022. *Goodman*, 2020 WL 5015613, at *5. Unlike Mr. Goodman, Mr. Jorgensen is not seeking the application of FTCs during the phase-in of the FSA. In addition, Mr. Goodman's claimed release date had passed, *id.* at *1, whereas Mr. Jorgensen's has not. Finally, most courts—including this one—have disagreed with *Goodman*. *See Rand*, 2021 WL 5569649, at *5–6: *Bartlett v. Birkholz*, No. 21-CV-667 (NEB/TNL), 2021 WL 5450618, at *3 (D. Minn. Sept. 8, 2021) (citing cases), *R. & R. adopted*, 2021 WL 5449290 (D. Minn. Nov. 22, 2021).

Mr. Jorgensen also contends that FTCs should be applied to statutory time served, much as good conduct time ("GCT") is applied, because they are so similar. He asserts that "FTCs look and feel remarkably similar to GCTs. FTCs and GCTs are both earned. FTCs and GCTs can't be used until the end of the sentence. FTCs and GCTs can be lost due to disciplinary action." (Pet'r's Reply at 8–9, Dkt. No. 15.) Mr. Jorgensen's argument is unavailing. Despite some similarities, GCTs and FTCs are applied differently; namely, "the BOP has no discretion to award or not award Good Conduct Time credits once the inmate is eligible," and "the FSA explicitly limits the BOP's authority to apply FSA Time Credits

9

until an inmate meets certain criteria." *Smith*, 2023 WL 3170436, at *5. This is because of an important difference: "the FSA clearly establishes that an inmate may lose FSA Time Credits 'for violation of the requirements or rules of an EBRR Program or PA.'" *Id.* (quoting 28 C.F.R. § 523.43(a).) Simply stated, GCT credits, "once earned, cannot be taken away for bad behavior; FSA Time Credits can." *Id.* Because FTCs, unlike GCTs, may be lost after they are earned, they must not be applied until they are equal to the remainder of the inmate's sentence. *See* 18 U.S.C. § 3624(g)(1)(A); 28 C.F.R. § 523.44(b)(1).

Mr. Jorgensen also argues that applying his earned FTCs should affect the percentage of his statutory term served. (Pet'r's Reply at 8, Dkt. No. 15). The Court need not decide whether FTCs should be calculated toward the percentage of time served, because the FTCs cannot be applied until they equal the number of days left in his sentence. *See Wanner*, 2023 WL 3483919, at *6.

Because Mr. Jorgensen's earned FTCs do not yet equal the remainder of his sentence and, unlike GCT credits, his FTCs are speculative until applied, he is not entitled to habeas relief under § 2241.

**IT IS THEREFORE RECOMMENDED** that Mr. Jorgensen's Petition (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE** and that judgment be entered accordingly.

Date:  May 25, 2023                                    *s/ John F. Docherty*
                                                       John F. Docherty
                                                       United States Magistrate Judge

## NOTICE

**Filing Objections**: This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report and Recommendation within **fourteen** days. A party may respond to objections within **fourteen** days after being served a copy of the objections. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).